Good morning. Morning. I'm Forrest Hainline, and along with Arthur Silbergeld, represent Appellant Accelerated Payment Technologies. The issues on this appeal involve only the interpretation of the meaning and effect of written agreements. These issues of contract interpretation are reviewed de novo, without deference to the court below. And even where a trial court has received evidence, the determination of whether an ambiguity exists remains a question of law, subject to independent review on appeal. There are two integrated written agreements which overcome, which supersede, the oral agreement that the jury found was entered into between APT and Melbye. Let's get some chronology down first. The oral promises that the jury found were made between 2001 and 2003. Let's look at the handbook, counsel. The handbook, how does the handbook preclude the post-termination commission agreement? Because that handbook talks about products that are shipped for which payment is received. The language in the handbook, Your Honor, says in absolute terms, eligibility for any commission ends on the last day of employment. Then there is an example of, therefore, under this broad and absolute principle of eligibility for any commissions ends on the last day of employment, there is an example of commissions will not be paid for credit card processing revenue for any dates following the date of your employment. Any commissions is any commissions. Mr. Melbye was suing for commissions, and the handbook precluded the payment of any commissions after the last date of his employment. The employment agreement was incorporated into the at-will contract, which was, by the way, signed April 26, 2006, because it satisfied all four requirements of the Shaw case. Under Shaw, a contract need not recite that it incorporates another document so long as it guides the reader to the incorporated document. And there are four requirements. One, the reference must be clear and unequivocal. The short four-paragraph at-will agreement references the employee handbook seven times. I'm looking at the handbook and hopefully the right provision that you're referring to in terms of discussions of commissions. It says commissions will be earned when products are shipped. And Melbye testified that these products referred to really physical products and not the software. So we're talking about a jury trial here. Couldn't the jury, based on the language here that I referenced, coupled with his testimony, then conclude that this doesn't cover the software commissions? Well, if you look at the order denying defendant's motion for judgment as a matter of law at ER 4 and 5, the judge found the plaintiff was a salesman paid largely on commissions for revenue generated by his marketing of X-Charge. He was marketing something. He was marketing a something, a product. And that marketing allowed him to get commissions. And the employee handbook said eligibility for any commissions, any commissions at all. Just flat out, any commissions ends on the last day of employment. Melbye is suing for commissions. That's what he's suing for. And the employee handbook says eligibility for commissions ends on the last day. There's a second reason, a second contract which comes into play here as well. Melbye wanted some clarity. If you look at the summary judgment order at ER 91 and 92, Melbye asked Knapp for a document that would protect him in the event Knapp was hit by a bus. Melbye and ATP entered into a change of control agreement, which provided that Melbye would be paid a lump sum if he were terminated without cause. So the issue on the change of control agreement was, however the preceding years are interpreted, as a matter of law, under his at-will employment agreement, he was not entitled to any commissions. If in some way he was, the change of control agreement provided for what he would get if he was terminated without cause. Termination payments. And this was a lump sum payment, not residual commissions. And the lump sum payment was what he would have been entitled to had the contract remained in effect. That was the only contract, Your Honor, that Melbye could have sued upon. And he tried. Melbye attempted to amend his complaint to add a claim for breach of a written contract, breach of the change of control agreement, but he brought it too late. Judge Gonzales ruled that he wasn't timely in his motion to amend to add the claim for breach of written contract. Melbye did not appeal from that order denying his motion to amend. The change of control agreement under 1675 supersedes any prior and all prior contracts having to do with its subject matter. So Melbye had, for a time, a right for a lump sum payment. That's the only right he could have sued upon, and he chose not to sue upon that right. Now, the change of control agreement was terminated, but that does not make that contract in any way illusory or ineffective. Under California law, an at-will employee, employer, the employer of an at-will employee, is entitled to change the terms and conditions of employment, including compensation, at any time. And the rule is if the employee continues to be employed after that change, he or she has accepted the offer of a unilateral contract. Melbye continued in the employ of... You know, I'm not sure that's totally right in terms of consequence of at-will. That is to say, at-will employment clearly, as you state, allows the employer to change the terms of employment, including compensation, from a certain time forward. But I'm not sure that it allows an employer of an at-will employee to change the terms retroactively with respect to work already performed. Well, Your Honor, under the Singh case and the DG Incento case, unless there is some vested interest in, for example, a vested stock option, there is no earned right. I mean, the at-will employee... Let me give you a simple example. I understand this may not be a simple example that we're dealing with, but let's start with a simple example. I'm an at-will employee. The terms of my employment are that I'm to be paid $20 an hour. I work for two weeks. I'm fired at the end of the two weeks because I'm an at-will employee. They don't give a reason. And they say, because you're an at-will employee, we're not going to pay you for the work that you just performed at the rate under which you were working. They can't do that. That is to say, they can fire me. They don't have to pay me $20 an hour from here forward, but they do have to pay me for the work I've performed. Isn't that right? That is right.  Here we're talking about... But this is different. He's an at-will employee. He's terminated. He has done work. And he's claiming that because of the work he has performed, he's entitled to these commissions. So I think the fact that you're an at-will employee by itself doesn't help you. Well, it does in the context of the documents that we have here. Because what the policy was, which was part of his at-will agreement, was that eligibility for any commissions ends on the last day of employment. Melby said, well, I had this oral agreement that said that I would get residual commissions after I am terminated. And what happened was, in the change of control agreement, whatever the deal was before, the parties reached an agreement that upon termination, here's what you get for when you are terminated without cause. Here's what you get. You get a lump sum payment. You don't get residual commissions, but you get a lump sum payment. Now, in that circumstance, we're not talking about payment for work that was already being done. We're talking about whether or not you get commissions after you're terminated. Here, under the change of control, it wasn't commissions. It was a lump sum payment. The commissions are the compensation for work being done. The only question is whether under the contract he's entitled to it. But it's not because he's an at-will employee that he might not be entitled to it. The question is, what are the terms of the contract? All right. The point on the change of control agreement, Your Honor, is that the fact that the change of control agreement was terminated, whether that was effective or not, whether the change of control agreement was validly terminated or not, doesn't matter because Melvie was too late in raising that issue. But secondly, the company, when you're right on termination to receive a lump sum payment, if the company decides to change that term of employment, Melvie had two choices. He could have sued then or he could have continued to work and accepted the new terms of employment. Doesn't the change of control agreement have a provision that permits Mr. Melvie to also participate in other, I forget what the terms are, benefits and bonuses, other incentives that had been promised? It did, and those aren't at issue here. You're right, Your Honor. The provision had, the change of control agreement had a provision that Mr. Melvie was entitled to participate in other benefits, pensions, but this is not what we're talking about here. The issue here is whether he's entitled to payment upon termination, post-termination commissions, and the change of control agreement specifically and unambiguously addressed what Mr. Melvie would be entitled to upon termination. We're talking about termination payments, not stock options or other benefits or health insurance or anything else that's not at issue in this case. Well, this is almost like a stock option, isn't it? No. I mean, he already did the work and was entitled to residual payments. There wasn't much more for him to do. Well, he did work. That's the deal he made. And just to say that, well, you're at will and we can terminate it, and so whatever residuals you're entitled to are gone, that doesn't seem right, does it? Well, the deal he made, it depends on the deal he made, and the deal he made under his at-will written integrated employment agreement, which incorporated the employee handbook, the deal he made was very simple. Eligibility for any commissions ends on the last day of employment. That's the deal that he made. Commissions that he earned. In other words, he's out there selling and he gets commissions. He's no longer working. He doesn't get those commissions. It doesn't tell you anything about the commissions that he's entitled to on work he's already done. Well, that's... The residuals, we call them. And this employment agreement and the employee handbook, which it incorporated, addresses that issue, Your Honor. Eligibility for any commissions ends on the last day of employment. So he's not entitled to keep receiving commissions after he is employed. Obviously, he doesn't get commissions on things that he doesn't sell after he's not employed anymore. So this clearly only talks about one issue, residual commissions. And the language is flat and unambiguous. Does it use the word residual? They use the word any commissions. Well, okay. Any commissions. And the word any is interpreted in its normal sense as all. Well, I'm looking at the verdict form. Question number three asks the jury to decide, at the time of Mr. Melby's termination, was there an oral or implied, in fact, promise to pay Mr. Melby residual commissions post-termination? And the jury checked the box yes. That's correct. And that issue should not have gone to the jury because there was a written contract. And the written – after the time that the oral agreements were made, there was a writing that Mr. Melby entered into that he agreed that no, he is not entitled to any commissions at all after he's employed. Right. No, I understand the argument. I point out the jury's answer to question number three because it was really in response to Judge Prakerson's question regarding residual. It was characterized as residual commissions to the jury. Your argument is that that issue should have been either precluded from going to the jury or the jury misanalyzed it because of the presence of these written contracts. And in looking at the written provisions that you rely on, I don't know that it's all that clear cut. It's a jury determination. The jury heard all of that evidence, right? They had the written agreements before them. Sure. And that's not unlike what happened in the FBT case where a contract where Judge Gutierrez in L.A. determined that there was an ambiguity in the contract. He let it go to the jury. The jury came back with a verdict for the plaintiff. And this court looked at the contract and said it doesn't matter what the jury determined. When you're looking at the language of a contract, that's a matter of law. Judge Gutierrez should have looked at it as a matter of law just as Judge Gonzales should have. And this court doesn't look at what the jury did in determining whether or not there was an oral contract if there was a writing after that on the same subject that addressed those terms and disentitled him to any right to a commission after he was employed. It doesn't matter what the jury did. That could apply to a situation where, you know, he was working on a sale. He thought he was ready to close it at any time. But then he gets discharged, and he says, well, you know, I was 98% there. And so if that comes through, I've got to get 98% of whatever the commission is. So that language that we've been talking about could refer to a potential commission that in a deal that was not quite but was very close to being made. It depends on the party's agreement, Your Honor. And if the party's agreement is eligibility for any commission ends on the last day of employment, then he's not entitled to receive commissions after he's employed. It depends on the deal he made. And here he signed a written at-will agreement that seven times mentions the handbook, and the handbook language is very straightforward. Eligibility for any commissions ends on the last day of employment. So he might have been entitled to commissions under another deal, but not under this one. Well, I fully understand your position. You're over your time. Yes, Your Honor. Okay. Good morning, and may it please the Court. Kendra Hall on behalf of the appellee, Richard Melby, who's also referred to in the record as Brent Melby. And what we're hearing today is that the jury's verdict that resulted after two years of litigation and a number of days of trial should be overturned. And what it should, the request that it be overturned on is two pages out of an 84-page employee manual. This was not an integrated employment contract. And I think what really sends that point home is that the appellant's excerpts of the record, page 64 at lines 26 to 27, there's a pretrial order signed by the parties. And it states, defendant denies the existence of any contract, oral or written, that governed Melby's compensation post-employment at the time of his termination. So, unlike what happened in the FTB case, where an issue was squarely presented to the district court and a summary judgment should have been granted, this ATP never claimed to the district court that an express employment contract that was integrated governed in this case. The entire case was about whether or not the CEO of the company, Mr. Knapp, and his long-term 25-year employee, Mr. Melby, had entered into an oral and implied promise. And now on appeal, that promise is not disputed. It's not the subject of its appeal. The jury found that what they're trying to do is to cut that promise off at its knees by now manufacturing a legal argument based on contract claims that simply did not exist and were not supported by the record. So we have briefed issues of waiver that occur when an about-face happens like that at the court of appeal. Because Judge Gonzalez was never presented with a motion that said, interpret this employee manual as an employment agreement and find that it's integrated. And in fact, a jury instruction was given and was not objected to, which told them, consider the employee manual in addition to all the other surrounding circumstances in terms of what was Mr. Melby's agreement. And the jury did that, and the jury came back and found in favor of Mr. Melby. And in the post-trial motions, when these issues were raised to Judge Gonzalez, she said it was far from clear that the handbook was a contract. And she said the validity, the scope, and the enforceability of that document was not a focus at trial. And for the change of control agreement, that document was never a basis of the summary judgment motion. Well, in looking at just the way that the parties negotiated the language of the verdict form that went to the jury, right? There was extensive negotiation, particularly with regard to question number three. And ATP wanted a jury instruction on the change of control agreement. It had been rescinded. They had moved and eliminated to preclude Mr. Melby from presenting argument regarding the enforceability and potential defenses that would apply to that agreement because there was testimony that came out that clearly there was at least a misunderstanding in terms of the fact that once the change in management occurred, that no party could unilaterally cancel the agreement, which is what happened. They rescinded it, tried to make it so that Mr. Melby would have nothing. And so in any event, the evidence that came in on that document was severely limited at trial. And Ms. ATP argued extensively that whether or not that document, which nowhere mentions Mr. Melby's commission agreement, whether it was intended to supersede the implied promise was a question in fact, a fact for the jury. And there was never a contrary claim. And so when the issue was raised in the post-trial motions, Judge Gonzales found it to be entirely spurious that they were trying to make that claim at the last minute. I would also mention... It seemed from the verdict form that this battle at trial was really over the existence of the promise, whether there was a promise made that he'd get his post-termination commissions. That's absolutely correct. That was the battle at trial. And now we're up on appeal after having gone through that battle and after the jury having sifted through the disputed evidence on that issue. And we're facing a claim that binding employment contracts existed when that's contrary to what was stated in the pretrial order. And in fact, it's contrary to the explicit language in both of the documents that they're talking about. The employee manual in the page is not provided to the court, but which we provided in our supplemental excerpts states this is a policy manual. It is not intended to be a complete statement of benefits or policies. There are other benefit plans not covered. Nothing in this manual is intended to create an employment contract. That's on page one of the employee manual. It also gives CAM the unilateral right to change, to modify, to supplement, to add to that policy manual. And in fact, the testimony at trial came out that when Mr. Melby was presented with the acknowledgement at the handbook and asked to sign off, he spoke with the CEO, Mr. Knapp, and said, what is this commission's policy? I have my separate deal. And the CEO said, Brent, that does not apply to you. That has nothing to do with you. You can read the provision and see it's talking about a separate side of the business that deals with hardware. It doesn't deal with the X charge that you're dealing with, and you have your separate deal. And when the CEO was questioned at trial and asked, did this employment manual change Mr. Melby's oral agreement, he said, absolutely not. And when he was asked, did you have authority to make separate oral agreements, such as the undisputed oral agreement and implied agreement that exists now in this case, he said, yes, as CAM's CEO, I had that authority. Anything other than at will, changing an at will status, he had that authority to make those agreements, and only the at will portion had to be in assigned writing by the CEO. And the other thing I wanted to mention is that even if, which the testimony was that it did not apply to Mr. Melby, but even if the sales commission policy applied to him, GUS states that provisions such as this in an employment manual are not binding, that it's information for the jury to consider in the totality of circumstances in terms of whether an implied contrary understanding or agreement was reached. And that's exactly what the jury was instructed in this case. It was given the manual, and it was given the testimony, and it was allowed to go through that information. And again, I think APT's argument is that GUS doesn't apply because there's integration clauses, and I would just emphasize again, Judge Gonzales was never asked to find that any agreement was integrated, and on the face of those documents, it's apparent that they were not intended to be the final terms and agreements of the party. The writings say that, and the testimony said that. On the change of control agreement, I briefly mentioned that there's nothing in that document that covers commissions explicitly, and Mr. Melby testified that it was entirely separate from his commission agreement. He testified that it was a deterrent, and as has already been pointed out, Section 8 explicitly says and leaves room for other types of agreements because it has a non-exclusivity provision stating that it does not affect other benefit plans, and that's exactly what Mr. Melby had was another type of plan. It was not affected. He had other vested benefits that were not affected, and in any event, that agreement was rescinded, and Mr. Knapp, the CEO, testified that without the change of control agreement, Mr. Melby's oral and implied promise for the continued commissions remained in place. So respectfully, Your Honors, we would ask that unless you have any questions for me, that the judgment in favor of my client and the reasoned verdict of the jury be affirmed. Thank you. Thank you. The matter is submitted.
judges: Pregerson, Fletcher, Nguyen